**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>WILLIAM D. KWIATEK,<br><br><br>Debtor. | )<br>)<br>) Chapter 7<br>) Case No. 07-11753-MSH<br>)<br>)<br>)<br>) |

## RESPONSE TO STATUS REPORT OF TRUSTEE

Excalibur I LLC ("Excalibur) hereby files this response to the January 19, 2019 Status Report of the Trustee.

**A. The Trustee Should Stop Shifting Blame for Delays to Excalibur**

1. This most recent Status Report ("Report") is the sixth filed by the Trustee in this case in response to this Court's Notice of Inactivity issued on December 9, 2016 and re-issued again on July 10, 2017.

2. This is a Chapter 7 case which was filed on March 6, 2007, nearly twelve (12) years ago. It is rare for a Chapter 7 case to last this long. In his series of status reports the Trustee seeks to prejudice Excalibur I, LLC ('Excalibur") by trying to blame Excalibur for the slow administration of this estate. We have asked the Trustee to refrain from using prejudicial language in the past and yet the most recent Report continues the practice of finger pointing and making excuses at the expense of Excalibur and its reputation before this Court.

3. Excalibur has been quite patient with the snail like progress of this case. However great prejudice has accrued to Excalibur over the ensuing years. Aside from the cost and expense it has incurred in trying to cooperate with the Trustee's overbroad discovery

requests, its principal and the primary source of information about any issues that may arise (Melvin Schreiber) passed away in April, 2015, four years ago and eight years after the above captioned Chapter 7 Proceeding was filed. If the Trustee does decide to initiate action after 12 years, Excalibur's ability to defend has been severely diminished by the passing of Melvin Schreiber.  Now, the Trustee complains that he does not have answers to unspecified questions he might have obtained from Melvin Schreiber.

4.      Holding a potential litigation over people's heads for twelve years and then publicly blaming Excalibur for the unreasonable delay is quite unfair and unnecessary. The purpose of this pleading is to identify and hopefully counter the Trustee's tactic of using his status Reports to cast Excalibur in a bad light to the Court and to other parties who might see these Reports.  The Trustee could certainly file Reports that do not contain gratuitously prejudicial material.  It is absurd to suggest that the main reason for the delay in the administration of this estate is solely the responsibility of a third party to the estate.

5.      It is extremely prejudicial to Excalibur for the Trustee to use the opportunity to file a report as a means to diminish the credibility of Excalibur.  There is no formal response date with respect to the Reports and there should be no reason to respond, except for the continuing unfair attempt to gain unfair advantage at the expense of Excalibur.  Therefore, this Response is filed by Excalibur because Excalibur has determined that it is important for it to advise the Court that Excalibur does not agree with the Trustee's rendition of the cause of the delay in closing this estate.

6.      Given that this Chapter 7 case has lasted for twelve (12) years, the Trustee should not be leveling blame solely on a third party for this long of a delay.  This is a small case and is

merely a Chapter 7 liquidation.  Certainly, a Trustee as respected as the Trustee in this case, could easily have resolved this matter in less than 12 years (so far).[1]

7.    The fact that Excalibur cannot possibly be the sole reason for the delay in the administering of this estate is established by the Trustee's Reports.

    a. In paragraph nine of the Trustee's Report dated January 10, 2017 it is stated "On December 20 and December 22, 2016, Excalibur and the Schreiber Firm produced documents in response to the most recent request of the Trustee and V&L.  V&L is reviewing these documents and the Trustee will confer with V&L following its review."  December 2016 was over two years ago.

    b. In paragraph 10 of the Trustee's Report dated August 23, 2017 it is stated: "Since the time of the production, V&L has been engaged in the review and compilation of the voluminous amounts of data produced and is in the process of compiling a report for the Trustee's review and consideration in connection with his efforts to recover assets in this case." According to paragraph 9, the reference to the production was to production by Excalibur and Schreiber Law[2] on December 20, 2017 and December 22, 2016.  The Report was on August 23 2017, eight months later.  In more recent reports they claim that the production was insufficient in some still unspecified way.  Why was that not known eight months after the production?  How could that be even remotely the fault of Excalibur?

    c. In paragraph 9 of the Trustee's Report dated January 1, 2018 it is stated "Since the time of the production, V&L has dedicated multiple staff members to the review an compilation of the voluminous amounts of data obtained by the Trustee,  V&L informs the Trustee that it is nearing completion of its review. In paragraph 10 the Trustee adds "V&L is preparing a detailed report for the Trustee in advance of a meeting between the trustee and V&L in

---

[1] This case might remind an observer of the Whitewater Investigation.  After many years of investigation, it turned out that Whitewater was simply a bad real estate deal.  That could well turn out to be the case here as well.  Excalibur believes that the Debtor, who arranged the acquisition of the consumer collection portfolio purchased by Excalibur, did not properly or accurately assess the portfolio.  Therefore, the investment did not perform well.  Excalibur asserts that this is why no money has been distributed to the corporate owners of Excalibur during the course of this marathon bankruptcy case and why it is not intended or expected that any such distribution will be made in the future.  If what the Trustee is seeking is assurance that if the other owners receive ownership distributions that the estate will as well, he simply has to ask for this assurance.  Since no such distributions are intended it will most likely not lead to a recovery for the estate, but at least it would provide assurance that the estate will be treated as well as the other owners.

[2] Schreiber Law is the law firm often, but not exclusively, used by Excalibur in its collection efforts. The principal attorney at Schreiber Law is Jeffery Schreiber, the son of the late Melvin Schreiber.

connection with the trustee's efforts to recover assets in this case." The Trustee's Report referred to was submitted to the Court one year ago.

    d. In paragraph 9 of the Trustee's Report dated July 16, 2018 it is stated "…V&L, with the input of the Trustee, has dedicated at least two to three of its professional to the review and compilation of the voluminous amounts of data obtained in connection with the Trustee's efforts to recover assets so that the data could be analyzed." This was six months ago. This case is not particularly complicated. Excalibur is not some multi-national entity with far flung subsidiaries. Excalibur agrees that voluminous documentation was provided to the Trustee by Excalibur and Schreiber law, but that was in 2016 and earlier. Neither Excalibur of Schreiber Law have received any subsequent written or oral requests for information.

    e. In paragraph 4 of the Trustee's Report dated October 10, 2018 it is stated "The Trustee will review that analysis for potential claims of the Estate and expects that he will make his determination within 30 days following his review." That was three months ago.

    f. In the Trustee Report dated January 15, 2019 the Trustee acknowledges again that he has received thousands of records and that V&L has dedicated multiple professional specializing in forensic accounting to review, compile and analyze the voluminous amount of data obtained by the Trustee and his professionals." He further states that V&L has prepared an analysis of its investigations to date for the Trustee's review. The Trustee has conferred with V&L on multiple occasions regarding its efforts. The Trustee recently met with Special Counsel to review the Estate's potential claims in light of V&Ls investigation to date and to discuss strategies for proceeding forward.'' They are doing all this now? In 2019!

**B. Excalibur Believes That It Has Gone To Great Lengths and Expense To Cooperate With the Trustee.**

    8.    The Trustee admits in his most recent Report that he has received "Thousands of records." Excalibur does not dispute that. Excalibur and Schreiber Law have produced reams and reams of information. The Trustee has not specified what other documents he is still looking for. He indicates that his accountants have vaguely asserted that more documents probably exist based on the nature and quality of what has been produced to date. That at least logically infers that the nature and quality of what has already been produced has been good enough that people

keeping books of such high quality would have other documents as well. What documents does the accountant believe ought to exist that haven't been included in the "thousands of records" already produced? In all this time it does seem that efficiency would dictate that someone could have inquired about particular documents that they think exist? Excalibur has no idea what is being sought that has not already been supplied. They also don't know of any documents that they have that would answer the trustee's unexpressed questions. The fact that the Trustee's accountant thinks that other documents must exist (for a reason that is hard to understand) does not mean that such documents exist. Since the Trustee's accountant thinks that certain documents must exist he must have an idea about what those documents would be. Why has nobody provided Excalibur with that information? Further, why are these documents that probably don't exist "essential to the accountant to meaningfully analyze the records of Excalibur?" If they really seek the answers they purport to seek why don't they simply tell Excalibur what they are looking for? Maybe after twelve years they could also tell Excalibur the purpose of the investigation. The Trustee says that the accountant has prepared an analysis of its investigation for the Trustee's review. Wouldn't it make sense to discuss these findings with Excalibur? Excalibur has heard nothing in recent years. We do know that some of the findings of the accounting firm which were asserted by them during discussions in 2016 were simply based on a logical but incorrect conclusions based on the accountants review of the books.[3] It seems to Excalibur that it would be sensible for the Trustee to share what is in his accountant's report to the extent necessary to ferret out the kind of issues that have existed in the past. After

---

[3] As one example, the accountant assumed that a Schreiber Law account named E-2 was an Excalibur account since Excalibur starts with an E. They raised this issue in a most emphatic way. The account was not an Excalibur Account but was a Schreiber Law Escrow account. That account contained funds collected for many of the law firm's clients, including but hardly limited to Excalibur. We understand that this misunderstanding occurred in good faith and for understandable reasons. We are glad we were able to explain this to the Trustee and in the process save the estate hundreds of hours that might have otherwise been spent on what would have been a wild goose chase.

all, Excalibur has no idea about what the Trustee's concerns are. How does this ever get resolved if Excalibur does not have the slightest idea why the Trustee is troubled about anything to do with Excalibur?

9. In paragraph 8 of his Report, the Trustee points out that Excalibur, in a motion for a Protective Order stated that the "Trustee's requests for information contained confidential personal information of third parties." That is true, but the Report makes it sound like this assertion was part of a delaying tactic. Federal consumer privacy laws are quite severe and strict. Why would the Trustee even want the names and identifying information of many consumer debtors whose paper had been purchased by Excalibur or owned by other clients of Schreiber Law? For records to be delivered required removing material related to consumers that could not be disclosed under applicable law. The material was produced and in a form which complied with applicable law and Excalibur has heard no complaint about the substance of the documents produced. Schreiber Law even searched for ways to help the Trustee locate older documents that no longer exist. They conferred with their software company and discovered that it might be possible that some older records may be able to be reconstructed. Such a task would also entail a time consuming and expensive process that would have to be undertaken to assure that privacy laws were complied with. Schreiber Law offered to help with the process, but the costs were hard to assess primarily because the software company would not guarantee the quality of the results of its efforts and was not willing to cap the costs. However, the best estimate of the cost of the project was $25,000. The Trustee did not respond to Schreiber Law's offer to help the Trustee obtain these ancient records if the Trustee paid the cost. The point is Schreiber Law and Excalibur, while protecting themselves from grossly overbroad initial requests, believe that they have gone beyond the call of duty to try to get information to the Trustee. Excalibur does not

criticize the Trustee for not spending $25,000 for that effort[4]. In fact Excalibur believes the Trustee was correct.  However, the attempt of Excalibur and Schreiber Law to co-operate ought not to be consistently criticized.  The Trustee declines to have discussions about his needs or his accountant's findings.  That fact has certainly contributed to what has delayed the administration of this estate.

C. **The Trustee may be Investigating Issues Litigated 16 Years Ago Based Upon a Series of Fallacious Premises**.

10.     This bankruptcy case has gone on for well over a decade and disputes existed between the Debtor and Melvin Schreiber and Suzanne Schreiber[5] well before that. In fact, Mr. Kwiatek commenced pre-petition litigation in 2003 (regarding the relationship of the Debtor and Excalibur).  The Debtor made every scurrilous allegation conceivable in that litigation.  That was 16 years ago.  The Debtor's claims were dismissed and the counterclaims brought by Melvin Schreiber resulted in a final judgment which totaled nearly $1.2 million of the time of filing.  Even if there were things to investigate, and Excalibur has not been informed of any, the statute of limitations would almost certainly bar them.  In fact, any potential relevant factual allegations were almost certainly raised in state court litigation.  Principles such as res judicata, collateral estoppel, and the law of the case should effectively preclude whatever causes of action the Trustee might bring.  Excalibur certainly expects that whatever the Trustee is concerned about was not already the subject of the litigation that already took place so long ago.  Further it is hard

---

[4] What had already been produced was probably sufficient already. Also, it is one thing to make requests that are overbroad and hard to comply with leading to costs to the party being investigated.  It is another matter altogether to demand the turnover of documents that no longer exist, but might be re-creatable, if the requestor is paying the outsized costs.

[5] Melvin's then daughter in law.

to imagine that any cause of action that would be asserted would not be susceptible to a "Stern objection."

11. The party most familiar with the affairs of Excalibur was Melvin Schreiber who ran Excalibur. He passed away four years ago. We are informed that the probate estate has been administered and closed. The effort of Excalibur to respond to the Trustee would have been much easier if Melvin were still living.

12. The Trustee has asserted that the estate owns a one-third interest in Excalibur and that he needs to assess the value of that interest.[6] Since Excalibur has disclosed that there have been no distribution of earnings to any owner of Excalibur during the course of this case and none is anticipated in the future, it does not seem that the valuation of ownership positions should be very hard to figure out. Unfortunately, it has been years since the Trustee has discussed this matter substantively with any representative of Excalibur. As pointed out above, the raw data turned over to the Trustee can be sometimes misunderstood if the parties are not communicating productively. Excalibur has no idea what the Trustee's concerns may be or what the trustee or his accountants feel that they are missing.

13. It is worth noting that the Trustee complained about delay tactics throughout any discussion held by the parties. Excalibur wants the court to know that if the Trustee actually believes this, that Excalibur believes that to be a misconception. No matter how hard Excalibur has tried to be cooperative, the Trustee has perceived an attempt to delay.[7] This problem has

---

[6] During the period in question the Equity in Excalibur was owned by three corporations in equal shares. The shareholders of the corporations were Mel Schreiber (Anlynn Associates, Inc., Suzanne Schreiber Zwicker, the shareholder of Consolidation USA I, Inc., and the debtor, the shareholder of Consolidation USA II, Inc.

[7] For example the Trustee apparently continues to believe that the need for redacting private consumer information was simply subterfuge to cause delay. The Trustee asserted that a confidentiality agreement would work and would avoid the need for redacting. The Trustee is incorrect as a matter of law. Yet, this keeps getting referenced in each Trustee's Report, presumably so that the Trustee can express another misconceived reason why the delay in this case was caused solely by Excalibur.

itself led to misunderstandings in the party's communications as well as causing further delay since the Trustee cut off discussions.

### D. The Trustee Should Avoid Prejudicial Statements In His Status Reports.

14.   This Response is not a response to a discovery request and there is no current dispute between the Trustee and Excalibur that is the subject of an active contested matter or an adversary proceeding. Excalibur has informally asked the Trustee to stop using the Reports to "set up" any proceeding that he may choose to bring. That request has not been responded to by the Trustee, except by the Trustee's continuing to finger point and attach blame in his Reports. The Trustee has made his unfair point already in numerous Trustee's Reports, and saying it again and again does not make it true. What the Court needs to know in the Trustee's Reports is the status of the case. It adds nothing to the answer to that question to repeat that the delay is the cause of a third party to the estate when it is inconceivable that any third party could cause this kind of extraordinary delay. Further, even if the Trustee felt it beneficial to express this point, he has already done so. There is no need for continuing to repeat something that is contested, over and over and over again, in Trustee's Reports.

15.   At the very least, this pleading should establish that there is a difference of opinion regarding the extent of Excalibur's attempts to cooperate with the Trustee. For these purposes, it is important for the court to know that Excalibur disagrees with the Trustee's self-serving, inappropriate and repeated attempts to disparage Excalibur publicly. It does not matter who is right or wrong, it simply is not appropriate for the Trustee to continue this prejudicial practice in his Trustee's Reports. Excalibur would hope that any further Trustee Reports disclose the status of the case without incessantly making excuses for the delays in the administration of the case by making contested and irrelevant assertions about Excalibur's role.

WHEREFORE, Excalibur prays that the Court take note of Excalibur's objection to the offending assertions in the Trustee's Reports and for such other and further relief as is just.

Dated:   January 31, 2019

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

By   */s/ Richard E. Mikels*
    Richard E. Mikels (BBO No. 345620)
    Pachulski Stang Ziehl & Jones LLP
    780 Third Ave, 34th Floor
    New York, NY 10017
    Telephone:  (212) 561-7716
    Facsimile:  (212) 561-7777
    E-mail:   rmikels@pszjlaw.com

PEABODY & ARNOLD

By   */s/ Robert A. McCall*
    Robert A. McCall (BBO No. 552682)
    600 Atlantic Ave
    Boston, MA 02210
    Telephone:  (617) 951-2100
    Facsimile:  (617) 951-2125
    E-mail:   rmccall@peabodyarnold.com